UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE
LABORERS HEALTH AND
WELFARE TRUST FUND FOR
NORTHERN CALIFORNIA, et al.,

Plaintiffs,

v.

ATOLL TOPUI  ISLAND, INC., a
California corporation, and
LOPETI KITEAU TOPUI, an
individual,

Defendants.

_____/

No. C 06-3059 SBA

**REPORT AND RECOMMENDATION RE
MOTION FOR DEFAULT JUDGMENT**

Plaintiffs are various fringe benefit trust funds established for the benefit of

members of the Northern California District Council of Laborers and the trustees of

those fringe benefit trust funds.  *See,* Complaint, filed May 5, 2006.  Defendant Atoll

Topui Island, Inc., ("ATI") is a corporation and is bound by a collective bargaining

agreement and various trust agreements to make timely contributions to plaintiff trust

funds for covered work performed by ATI's employees.  Declaration of John J. Hagan

in Support of Plaintiffs' Motion for Default Judgment, filed on October 26, 2006

("Hagan Decl.") at 4-8.  Defendant Lopeti Kiteau Topui is an individual and the CEO,

President, and owner of ATI.  Hagan Decl., at Ex. A; Declaration of Anne Bevington

in Support of Motion for Default Judgment, filed October 26, 2006, ("Bevington Decl.") at Ex. B..

On May 5, 2006, plaintiffs filed a complaint against ATI and Lopeti Kiteau Topui seeking to collect unpaid contributions and other damages due to multi-employer benefit plans pursuant to the governing collective bargaining agreement. See, Complaint for Damages for Breach of Collective Bargaining Agreements, to Recover Trust Fund Contributions and for a Mandatory Injunction.  Plaintiffs also ask the Court to compel defendants to comply with an audit as required by the collective bargaining agreement.  *Id.*

Plaintiffs served defendants with a copy of the Complaint.  See, section I, *infra*. See also, Original Summons and Proofs of Service, filed on June 19, 2006; Amended Proofs of Service, filed August 7, 2006.  Defendants have not filed a response to the Complaint.

In response to plaintiffs' application for entry of default, the Clerk of the Court entered default as to Atoll Topui Island, Inc. and Lopeti Kiteau Topui on August 9, 2006.

On October 26, 2006, plaintiffs filed and served their motion for default judgment.  See, Motion for Default Judgment and Proof of Service ("Motion").  On October 27, 2006, plaintiffs' Motion was referred to this court for Report and Recommendation.

On November 15, 2006, this court invited plaintiffs to submit supplemental briefing in connection with several issues presented by their Motion.  See, Order Authorizing Supplemental Submissions re Motion for Default Judgment.

On November 30, 2006, plaintiffs filed their supplemental submissions. Although plaintiffs served defendants with the court's November 15th Order and with plaintiffs' November 30th submission, defendants filed no response. Certificate of Service of November 15th Order, filed November 15, 2006; Proofs of Service attached to Supplemental papers, filed November 30, 3006.

On December 20, 2006, this court conducted a hearing in connection with plaintiffs' Motion.  No appearance was made on defendants' behalf.

In their Motion, plaintiffs seek a judgment against ATI (as an entity) and Lopeti Kiteau Topui, individually, in the amount $43,904.25, to recover unpaid contributions, liquidated damages, interest, attorneys' fees and costs.  Motion at 3; Hagan Decl., at ¶21; Supplemental Memorandum in Support of Motion for Default Judgment, filed November 30, 2006 ("Supp. Brief").  Plaintiffs also seek an order compelling defendants to submit to an audit of defendants' payroll records, and to pay all additional amounts deemed owing by the auditor.  Complaint at 6; Motion at 9-10 and 12.

## I.   <u>Entitlement to Entry of Default Judgment</u>

Plaintiffs seek entry of judgment by default against the entity Atoll Topui Island, Inc., as well as against Lopeti Kiteau Topui, individually.

Plaintiffs were unable to effect *personal* service of the Summons and Complaint on ATI and Mr. Topui.  See, Original Summons and Proof of Service, filed June 19, 2006; Amended Proof of Service re Lopeti K. Topui, filed August 8, 2006. Plaintiffs effected alternate service by leaving the documents with a resident over eighteen years of age at the address believed to be Mr. Topui's residence and by mailing copies of the documents to that address.  *Id*.; Declaration of Anne Bevington, filed November 30, 2006, ("Supp. Bevington Decl.") at ¶3.  See also, F.R.C.P. 4(e)(2).  Mr. Topui is the agent for service of process for ATI.  Accordingly, service on Mr. Topui satisfies the requirements for serving ATI.  F.R.C.P. 4(h)(1).

We asked plaintiffs to submit information explaining the bases for their belief that the summons and complaint had been delivered to Mr. Topui's residence.  Order, filed November 15, 2006.  Plaintiffs have presented evidence that would support an inference that the documents filed in this action have been served on Mr. Topui. First, plaintiffs obtained the address believed to be his residence (340 Chesapeake Avenue) from Transunion, a credit reporting agency.  Credit reporting agencies are a

1   type of entity that is likely to have a consumer's most recent address.  Second,

2   Transunion indicates that it has had that address for approximately two years, and

3   according to the process server, the current resident at one of Mr. Topui's former

4   addresses stated that Mr. Topui moved two years prior.  Supp. Bevington Decl., at Ex.

5   A.  The information from the current resident, therefore, supports an inference that

6   Transunion's records are up to date.  Third, the process server left the summons and

7   complaint with a resident at the Chesapeake Avenue address, and there is no

8   indication from the process server that this resident denied that Mr. Topui lives there.

9   Finally, plaintiffs have mailed multiple documents to the Chesapeake address and

10  none has been returned undeliverable.  Supp. Bevington Decl., at ¶3.  We

11  RECOMMEND that the District Court find that the alternate means of service

12  executed by plaintiffs satisfied plaintiffs' service requirement.

13       Plaintiffs also served defendants with their motion for default judgment.  See,

14  Proof of Service, attached to Motion, filed on October 26, 2006.

15       ATI has failed to respond to the Complaint or otherwise to appear in the

16  proceedings, and the Clerk of the Court entered default as to this defendant.  ATI

17  clearly constitutes an "employer"subject to liability under 29 U.S.C. §1145.  See, 29

18  U.S.C. §1002(5).

19       Mr. Topui has failed to respond to the Complaint or otherwise to appear in the

20  proceedings, and the Clerk of the Court entered default as to Mr. Topui.  Plaintiffs

21  seek to hold Mr. Topui personally liable for the alleged damages.  Plaintiffs contend

22  that Mr. Topui is exposed to personal liability on the following grounds (1) that he

23  constitutes a "fiduciary" and is liable for breach of fiduciary duty as a result of his

24  failure to pay contributions owed to the trusts and (2) that he is an "employer" as

25  defined by ERISA and, therefore, is subject to suit under 29 U.S.C. §1145.

26  Complaint; Motion at 8-9; Supp. Brief at 2-3.

27       Plaintiffs contend that Mr. Topui is a "fiduciary" as that term is defined by

28  ERISA, 29 U.S.C. §1002(21)(A).  Motion at 8-9.  In our November 15th Order we

    informed plaintiffs that the Complaint did not set forth an express, discrete claim for

4

breach of fiduciary duty.  Plaintiffs argue that the Complaint clearly notifies Mr. Topui that, in plaintiffs' view, he constitutes a fiduciary, that he failed to pay over trust assets, and, most importantly, that plaintiffs seek damages from him personally as a result of his failure to pay contributions.  Supp. Brief at 2.  It is plaintiffs' position that the essential elements for a claim for breach of fiduciary duty appear in the Complaint and that, by virtue of Mr. Topui's default, these allegations are deemed admitted.

Considering the appropriate construction of the pleading rules viewed in light of their purpose, we RECOMMEND that the District Court find that plaintiffs' pleading is sufficient -- although by a narrow margin.  Plaintiffs clearly allege that Mr. Topui constitutes a "fiduciary," that unpaid contributions are trust assets, that Mr. Topui exercised control over those assets when he failed to pay them to the trusts as required, and that the failure to pay them was wrongful.  Even if Mr. Topui would not completely understand the legal theory on which plaintiffs' claims are premised, we conclude that a rational person, even without substantial legal training, would have understood that he was being sued individually and that plaintiffs were seeking to hold him personally accountable independent of his corporation.  In our view, plaintiffs' allegations are sufficient to put Mr. Topui on notice of the claims against him.

Although we recommend that the District Court find the pleading sufficient, we ADMONISH plaintiffs that, in the future, claims such as this should be fully pled. There is no justification for plaintiffs' failure to plead an express claim styled "breach of fiduciary duty" and avoid creating close calls such as this.

Having found that the pleading was sufficient to put Mr. Topui on notice of plaintiffs' claim that defendant breached a fiduciary duty, we next consider whether the allegations deemed admitted by default, together with the proffered evidence, support plaintiffs' request for damages as against Mr. Topui.

//

//

1   ERISA provides,

2   Except as otherwise provided in subparagraph (B), a person is a
    fiduciary with respect to a plan to the extent (i) he . . . exercises any
3   authority or control respecting management or disposition of its assets.

4   29 U.S.C. §1002(21)(A)(i).

5   Plaintiffs' claim for breach of fiduciary duty is premised on the assertion that

6   the governing trust agreements make employer contributions "plan assets" from the

7   moment they become due.  If the evidence supports this assertion, then Mr. Topui's

8   failure to pay those contributions to the trusts when they came due amounts to an

9   exercise of authority or control over assets of the plan and renders Mr. Topui a

10  "fiduciary."  However, if plaintiffs' premise is unsupported, then plaintiffs cannot

11  demonstrate that Mr. Topui acted as a fiduciary when he declined to pay

12  contributions that had come due.

13  *Cline v. Industrial Maintenance Engineering and Contracting Co.*, 200 F.3d

14  1223 (9th Cir. 2000), does not purport to address the specific issue before us.

15  However, language in *Cline*, if taken literally, would preclude a finding that employer

16  contributions are plan assets before they are actually paid over to the trust.  200 F.3d

17  at 1234 (employer contributions do not become plan assets over which fiduciaries

18  have a fiduciary obligation until paid over to the plan).

19  Plaintiffs urge us to follow the Central District of California and conclude that

20  the Ninth Circuit's general assertion in *Cline* does not preclude the contracting parties

21  from providing as a matter of contract that contributions become trust assets from the

22  moment due.  *Trustees of the Southern Cal. Pipe Trades Health & Welfare Trust*

23  *Fund v. Temecula Mechanical, Inc.,* 2006 WL 1991749.  I find Judge Larson's

24  reasoning in *Temecula Mechanical* persuasive.

25  In the court's view, given the remedial purpose of ERISA, the Ninth Circuit

26  would endorse the Central District's decision that *Cline* does not preclude the parties

27  from making employer contributions "plan assets" as a matter of contract.

28

6

1    Our research confirms that this area of the law is complicated and that

2  reasonable minds may disagree about the extent to which the parties have or have not

3  agreed to make contributions "plan assets" from the moment they become due.

4    The trust agreements to which ATI and Mr. Topui are bound state,

5    Trust Fund . . . which shall consist of all Contributions required by the
     Collective Bargaining Agreements to be made for the establishment and
6    maintenance of the plan, and all interest, income and other returns
     thereon of any kind whatsoever, and any other property received or held
7    by reason of or pursuant to this trust.

8  Hagan Decl., at ¶11 and Ex. D at 6.

9    Pursuant to these agreements, trust assets include "contributions required . . . to

10 be made."  This language encompasses contributions that are due (required to be

11 made) but that have not yet been paid.  If the drafters intended to "vest" in the trust

12 only those contributions that the employer has actually paid, they easily could have

13 said so in clear, unambiguous terms.  They did not.

14   The Central District found that the phrases "money that will be paid," "which

15 are due and owing," and "money as shall be paid" each demonstrated an intent to

16 make <u>unpaid</u> employer contributions plan assets.  *Temecula*, 2006 WL 1991749.  The

17 contract language that Judge Larson of the Central District considered sufficient to

18 render contributions "plan assets" from the moment due is, in principal,

19 indistinguishable from the language "required to be made" in the trust agreements

20 before us.  This court adopts the reasoning set forth by Judge Larson and

21 RECOMMENDS that the District Court find that plaintiffs have demonstrated that

22 the governing trust agreements make <u>unpaid</u> employer contributions "plan assets"

23 from the moment they become due.

24   We RECOMMEND that the District Court also find that, by failing to pay

25 contributions when due, Mr. Topui exercised authority and/or control over plan assets

26 and thus is deemed a "fiduciary."  By unlawfully failing to pay contributions when

27

28

due Mr. Topui breached his fiduciary duty to the plan beneficiaries and is subject to personal liability for any losses he caused to the plan.  29 U.S.C. §1109(a).[1]

Given defendants' complete failure to appear and the significant risk of prejudice to the employee beneficiaries of the fringe benefit trusts when an employer fails to make the required contributions, the sufficiency of plaintiffs' complaint, and the apparent merit of plaintiffs' substantive claims, we RECOMMEND that the District Judge find that plaintiffs are entitled to judgment by default against Atoll Topui Island, Inc., and Lopeti K. Topui, individually.  See, F.R.C.P. 55(b); *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

//
//
//
//

---

[1]Because we recommend that the District Court find that Mr. Topui is liable for breach of fiduciary duty, we need not address plaintiffs' alternate and separate argument that Mr. Topui is liable as an "employer" under ERISA.  Supp. Brief at 3.  However, in the event that the District Court does not accept our recommendation with respect to fiduciary liability, we briefly address the contention that Mr. Topui is exposed to personal liability as an "employer."

In our view, the Ninth Circuit has concluded that (absent a finding of fiduciary liability) an owner of a corporation can be held personally liable for the unpaid contributions of the corporation only where (1) plaintiffs have established the predicate for piercing the corporate veil or (2) plaintiffs have presented evidence that the individual owner of the corporation himself directly employed employees performing work covered by the relevant collective bargaining agreement.  *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 515 (9th Cir. 1984).

Plaintiffs' attempt to distinguish *Reed* is unavailing.  The Ninth Circuit clearly states that an owner ceases to be an "employer" once he incorporates.

> Upon incorporation Reed ceased to be the employer, and Hal's Crane Co. became the employer in question.  Hal's Crane Co. alone should, absent special circumstances, be responsible for the unpaid contributions after it became the employer.  . . .  In this case Reed ceased direct employment of anyone upon the creation of Hal's Crane Co.

726 F.2d at 515 (emphasis added).  *Reed* goes on to state that the "proper standard for determining when an individual will be held personally liable for the trust fund obligations of a corporation controlled by that individual is [the standard for piercing the corporate veil]." *Id.*

Plaintiffs have not plead a predicate for piercing the corporate veil; nor have they plead that Mr. Topui directly employed any covered employees.  To the contrary, the Complaint alleges that Mr. Topui acted at all times in the interests of ATI.  *E.g.,* Complaint at ¶3.  We, therefore, RECOMMEND that, if the District Court finds that plaintiffs have *not* established that Mr. Topui breached a fiduciary duty, the District Court also find that plaintiffs have not established that Mr. Topui constitutes an "employer" under ERISA.  Under those circumstances the Court would not enter any judgment against Mr. Topui.

8

**II.    Specific Items of Relief Sought by Plaintiffs**

Section 1132(g)(2) of ERISA provides that in an action for delinquent contributions

> in which a judgment in favor of the plan is awarded the court *shall* award the plan --
> (A)    the unpaid contributions,
> (B)    interest on the unpaid contributions,
> (C)    an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D)    reasonable attorneys' fees and costs of the action . . ., and
> (E)    such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . ..

29 U.S.C. §1132(g)(2) emphasis added.

**A.    Unpaid contributions**

Plaintiffs seek unpaid contributions owing pursuant to the governing collective bargaining agreement and trust agreements for work performed during two periods: (1) plaintiffs seek payment for unreported hours for work performed by Sailoame Mapa from March 2, 2003, through November 14, 2004 and (2) plaintiffs seek payment for unreported hours for work performed by Jeremy Smith from January 2004 through June 2004.  Hagan Decl., at ¶¶17 and 19.

Unpaid contributions pertaining to these periods relate to work performed under the Laborers Master Agreement between Associated General Contractors of California, Inc. and the Northern California District Council of Laborers.  Hagan Decl., at ¶4 and Ex. A-E.  By becoming signatories to a Memorandum Agreement under which defendants agree to be bound by the Laborers Master Agreement and by the terms of the Trust Agreements incorporated therein employers agree to be bound by the terms of the Trust Agreements.  Hagan Decl., at ¶4-8.  The collective bargaining agreement and Trust Agreements govern employer contributions to the various employee fringe benefit trust funds and obligate employers to pay specified amounts into employee benefit funds on behalf of their employees who perform

covered work.  *Id.*, at Ex. A-E.  Defendants became signatories to the Memorandum Agreement on January 10, 2002.  Hagan Decl., at Ex. A.

Defendants have not invoked the procedures that would release them from their obligations under these agreements.  Hagan Decl., at ¶8.  Accordingly, ATI and Mr. Topui are obligated to pay contributions for covered work performed by ATI's employees pursuant to the Laborers Master Agreement for the periods March 2003 through November 2004 and January 2004 through June 2004.

Plaintiffs seek unpaid contributions for these two periods in the amount of $13,211.86.  Hagan Decl., at ¶¶17 and 19 and Ex. I and K.  In our November 15th Order we asked plaintiffs to provide additional explanation about the basis for plaintiffs' assertion that defendants owe $10,394.43 for hours worked by Mr. Mapa because it appeared to us that plaintiffs might have incorrectly failed to credit certain payments by defendants.  See, Order, filed November 15, 2006.  Plaintiffs have persuaded us that their procedure for calculating unpaid contributions in the circumstances presented is entirely appropriate.  See, Supplemental Declaration of John J. Hagan in Support of Motion for Default Judgment, filed November 30, 2006 ("Supp. Hagan Decl.") at ¶¶3-7.

Because plaintiffs' request for unpaid contributions is supported by the evidence, we RECOMMEND that the District Court enter judgment against defendants in the amount $13,211.86 for unpaid contributions for the periods March 2003 through November 2004 and January 2004 through June 2004.

## B.   Liquidated Damages and Interest

Plaintiffs seek liquidated damages and interest relating to the above unpaid contributions.  Motion at 3, 6-7; Hagan Decl., at Ex. I-L.  Plaintiffs also seek liquidated damages and interest relating to contributions that were delinquent but that defendants later paid for work performed by "Journeymen" from July 2003 through July 2006, and plaintiffs seek interest relating to contributions that were delinquent but that defendants later paid for work performed by "Apprentices" from November

1   2003 through June 2004.[2]  Motion at 3 and 7; Hagan Decl., at ¶¶13-14 and Ex. F and
2   G.

3

4                    1.    **Liquidated Damages as to unpaid contributions**

5          Plaintiffs seek liquidated damages in an amount equal to interest with respect
6   to *unpaid* contributions.  Motion at 3:19.

7          ERISA compels the court to award plaintiffs "an amount equal to the greater of
8   (i) interest on the unpaid contributions, or  (ii) liquidated damages provided for under
9   the plan in an amount not in excess of 20 percent . . . of the amount determined by the
10  court [as unpaid contributions]."  29 U.S.C. §1132(g)(2)(C).  Liquidated damages are
11  "mandatory and not discretionary" if "the following three requirements [are] satisfied:
12  (1) the employer must be delinquent at the time the action is filed; (2) the district
13  court must enter a judgment against the employer; and (3) the plan must provide for
14  such an award." *Northwest Administrators, Inc., v. Albertson's Inc.,* 104 F.3d 253
15  (9th Cir. 1996) citing *Idaho Plumbers & Pipefitters v. United Mechanical*
16  *Contractors, Inc.,* 875 F.2d 212 (9th Cir. 1989).

17         The collective bargaining agreement together with Trust Agreements provide
18  for an award of liquidated damages on delinquent contributions at the rate of $150.00
19  per month.  Hagan Decl., at ¶13 and Ex. B.  Therefore, plaintiffs have satisfied the
20  third *Northwest* requirement.

21         The evidence supports a finding that the liquidated damages sought in
22  connection with unpaid contributions for hours worked by Messrs. Mapa and Smith
23  pertain to contributions that were delinquent and unpaid as of May 5, 2006, the date
24  plaintiffs filed the complaint in this action.  If the District Court adopts our
25  recommendation to enter judgment against defendants for these unpaid contributions,
26  then plaintiffs will have satisfied the first and second requirements as well.

27

28
    _____
         [2]Plaintiffs state that these amounts were paid late by defendants or "recovered by the Trust
    Funds from other sources."  Hagan Decl., at ¶5.

1   Therefore, we RECOMMEND that, if the District Court enters judgment

2   against defendants for unpaid contributions that were delinquent and unpaid as of

3   May 5, 2006, the Court also enter judgment for liquidated damages in connection

4   with those contributions.

5        We further RECOMMEND that the District Court award liquidated damages in

6   an amount equal to interest on the unpaid contributions pursuant to 29 U.S.C.

7   §1132(g)(2)(C)(i).   ERISA provides for interest at the contract rate.   29 U.S.C.

8   §1132(g).   Plaintiffs have presented evidence that the applicable rate of interest under

9   the Laborers Master Agreement and Trust Agreements is 18% per annum and that

10  interest on the unpaid contributions calculated through October 25, 2006, totals

11  $6,235.67.   Hagan Decl., at ¶¶18 and 20.   Therefore, we RECOMMEND that the

12  District Court enter judgment for <u>statutory</u> liquidated damages in the amount

13  $6,235.67.

14

15        **2.        <u>Liquidated Damages as to delinquent but paid contributions</u>**

16        Plaintiffs also seek liquidated damages in the amount $5,100.00 with respect to

17  the contributions that were delinquent but that defendants later paid in connection

18  with hours worked by "Journeymen" from July 2003 through July 2006.   Hagan

19  Decl., at ¶13.

20        As we understand it, these contributions were late but were paid before May 5,

21  2006.[3]   With respect to contributions that were delinquent but were paid <u>before</u>

22  plaintiffs filed this action, plaintiffs cannot satisfy the first requirement imposed by

23  *Northwest Administrators*.   *Board of Trustees v. Udovch*, 771 F.Supp. 1044 (N.D.Cal

24  1991); *Idaho Plumbers*, 875 F.2d 212.   Accordingly, plaintiffs would not be entitled

25  to a mandatory award of liquidated damages <u>under §1132(g)(2) of ERISA</u>.   *Id.*

26  However, plaintiffs might be entitled to liquidated damages as a matter of <u>contract</u>.

27  *Idaho Plumbers*, 875 F.2d at 217 (§1132(g)(2) does not preempt the federal common

28

_____

[3]See, n. 2, *supra*.

1    law of liquidated damages when that section does not apply); *Udovch*, 771 F.Supp. at

2    1047.

3    　　　　A contractual "liquidated damages provision is enforceable in this setting, and

4    not void as a penalty, only if (1) 'the harm caused by a breach [is] very difficult or

5    impossible to estimate' and (2) the fixed amount is 'a reasonable forecast of just

6    compensation for the harm caused.'" *Udovch*, 771 F.Supp. at 1048 *citing Idaho*

7    *Plumbers*, 875 F.2d at 217.

8    　　　　Plaintiffs satisfy the first prong of the test.  "When an employer is delinquent in

9    paying contributions into a fringe benefit trust fund, the fund suffers some kinds of

10   harms that are very difficult to gauge." *Udovch*, 771 F. Supp. at 1049.

11   　　　　When we address the second prong of the test, whether the fixed amount is "a

12   reasonable forecast of just compensation for the harm caused," we focus on the

13   "parties' intentions." *Udovch*, 771 F. Supp. at 1048.  The negotiating parties "must

14   make a good faith attempt to set an amount equivalent to the damages they

15   anticipate." *Idaho Plumbers*, 875 F.2d at 217.  For the reasons explained in *Udovch,*

16   we focus "on the character of the process that led, at the time the contract language

17   was drafted, to the fixing of the liquidated damages figures or formulas." 771

18   F.Supp. at 1048.  We look for evidence that "the drafters made a good faith effort to

19   determine that there would be a rational relationship between the damages that would

20   be paid under the clause and the harms that would be suffered *in most of the*

21   *situations that were reasonably foreseeable.*" 771 F. Supp. at 1049 (emphasis in

22   original).

23   　　　　The evidence (unrebutted as a result of default) supports an inference that the

24   negotiating parties considered this issue and made a good faith effort to establish a

25   liquidated damages rate that would be a reasonable forecast of just compensation for

26   the anticipated harms.  The collective bargaining agreement states,

27   　　　　　　liquidated damages shall be assessed on delinquent contributions at a flat
     　　　　　　rate of one hundred and fifty dollars ($150.00) per month *to reflect the*
28   　　　　　　*internal administrative costs* incurred by the trust administrators in
     　　　　　　monitoring and tracking such late contributions. . . .  When economic
     　　　　　　conditions warrant, the Trustees of the Trust Funds specified in this

13

1 Agreement are authorized to amend the liquidated damages and interest
2 provisions of this Agreement.  Any adjustments implemented by the
  Trustees *shall be reflective of the true increases in the administrative*
3 *and legal costs* associated with the recovery of delinquent Trust Fund
  contributions.

4 Hagan Decl., at Ex. B (emphasis added).

5      Accordingly, we also RECOMMEND that the District Court enter judgment for

6 plaintiffs for liquidated damages at the rate of $150.00 per month with respect to the

7 contributions that once were delinquent <u>but were paid</u> <u>before</u> May 5, 2006.

8      The evidence supports a finding that the total amount of liquidated damages for

9 tardily paid contributions for the period July 2003 through July 2006 is $5,100.00.

10 Hagan Decl., at ¶13 and Ex. F.  Therefore, we RECOMMEND that the District Court

11 enter judgment for <u>contract-based</u> liquidated damages in the amount $5,100.00.

12

13          **3.    <u>Interest</u>**

14      If the Court enters judgment in plaintiffs' favor for *unpaid* contributions,

15 ERISA requires the Court to award plaintiffs "interest on the unpaid contributions."

16 29 U.S.C. §1132(g)(2)(B).  As previously stated, ERISA provides that "interest on

17 unpaid contributions shall be determined by using the rate provided under the plan."

18 29 U.S.C. §1132(g)(2).  Plaintiffs also seek interest in connection with *delinquent*

19 (but paid) contributions and are entitled to interest on these contributions as a matter

20 of <u>contract</u>.

21      Plaintiffs seek interest on all of the contributions (unpaid and tardily paid) at

22 the annual rate of 18%.  Hagan Decl., at ¶¶13-16, 18, 20.  Plaintiffs have submitted

23 evidence that supports a finding that 18% is the applicable interest rate under the

24 Trust Agreements.  Hagan Decl., at Ex. B.

25      Plaintiffs seek interest in the amount $6,235.67 for the unpaid contributions

26 relating to hours worked by Messrs. Mapa and Smith.  Hagan Decl., at ¶¶13, 14, 18,

27 and 20.  Interest on unpaid contributions has been calculated through October 25,

28 2006.  In the event the District Court enters judgment in plaintiffs' favor, plaintiffs

might seek amendment of the judgment to reflect additional interest that has accrued

14

1   from October 26, 2006, through the date of the judgment.  Additionally, plaintiffs

2   seek interest in the amount $7,669.44 for the tardy contributions that were made for

3   work performed by Journeymen and Apprentices.

4         We RECOMMEND that the District Judge grant plaintiffs' request for a

5   judgment that includes interest at the rate of 18% on unpaid and tardily paid

6   contributions in the amount $13,905.11.  We also RECOMMEND that the District

7   Court permit plaintiffs to move the Court to amend the judgment to include interest

8   that has accrued with respect to the unpaid contributions from October 26, 2006,

9   through the date of the judgment.

10

11         **C.    <u>Request for Audit</u>**

12        The collective bargaining agreement to which defendants are signatories

13  governs employer contributions to the various employee fringe benefit trust funds and

14  obligates the employer to submit monthly reports documenting the number of hours

15  worked by covered employees together with the monthly payments indicated as

16  owing on each month's report.  Hagan Decl., at ¶¶5-7.  The governing Trust

17  Agreements also obligate the employer to submit to an audit of its records for the

18  purpose of determining whether the employer has paid the appropriate amount of

19  contributions to the trusts.  Hagan Decl., at Ex. C.

20        As a result of defendants' failure to submit complete and timely reports as

21  contemplated by the governing agreements, plaintiffs have been unable to verify the

22  full extent of defendants' obligations for the period since July 1, 2004.  Hagan Decl.,

23  at ¶22.  Plaintiffs, therefore, ask the Court to enter judgment compelling defendants to

24  submit to an audit for the period from July 1, 2004, through the present.  Hagan Decl.,

25  at ¶22.

26        Plaintiffs also ask the Court to compel defendants to provide the auditor with

27  the following documents,

28        Individual earnings records; federal tax forms W-3/W-2 and 1069/1099;
          reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports;
          Workers' Compensation insurance; employee time cards; payroll

1
2
3
4
5

registers/journals; quarterly payroll tax returns (Form 941); check register and supporting cash vouchers; forms 1120, 1040 or partnership tax returns; general ledger; source records, including time cards and time card summaries for all employees; certified payroll reports; personnel records indicating job classifications and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; job cost records; records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation of defendants' financial records.

6

Motion at 12.

7
8

Section 1132 of ERISA authorizes the Court to award "such legal and equitable relief as the court deems appropriate." 29 U.S.C. §1132(g)(2)(E).

9
10
11
12
13

Accordingly, we RECOMMEND that the District Court enter judgment compelling defendants to submit to an audit for the purpose of determining the <u>full</u> amount of fringe benefit contributions, liquidated damages and interest owed for the period July 1, 2004, through the present.

14
15
16
17
18
19
20
21

We further RECOMMEND that the District Court order defendants to provide relevant records requested by the auditor including, without limitation, those listed above. Plaintiffs' requested documents include "records of related entities." We note that plaintiffs have not submitted evidence that would indicate that Mr. Topui has operated entities other than ATI during the relevant period. Nonetheless, we recommend that the District Court's Order clarify that the phrase "records of related entities" refers to records from Atoll Topui Island, Inc., and other entities, <u>if any</u>, that Mr. Topui has operated during the period covered by the audit that appear to offer work covered under the relevant collective bargaining agreement.

22
23
24

Plaintiffs also ask the Court to retain jurisdiction so that following the audit plaintiffs may move to amend the judgment to include additional damages, if any, found owing as a result of the audit. Motion at 12.

25
26
27
28

As stated on the record, we RECOMMEND that the District Court permit plaintiffs to apply to the Court to amend the judgment to include all sums revealed as due and owing by the audit -- on the following conditions: (1) plaintiffs demonstrate that defendants had an opportunity during the course of the audit to present input to

the auditor, (2) plaintiffs demonstrate that the auditor provided defendants with a draft of his or her final report prior to submission of that report to the Board of Trustees and that defendants were given an opportunity to communicate any responses to the draft report to the auditor, (3) plaintiffs demonstrate that defendants were given an opportunity to present information relating to the auditor's report directly to the Board *before* the Board issues a final decision about whether defendants owe additional amounts for the period July 1, 2004, to the present, and (4) defendants are given sufficient notice of the pendency of any court proceedings and a fair opportunity to challenge the accuracy of the audit before the District Judge.[4]  See, Transcript December 20, 2006 hearing.

## D.    Attorneys' Fees and Costs

Section 1132(g) of ERISA requires the Court to award plaintiffs "reasonable attorney's fees and costs of the action" when plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought.  29 U.S.C. §1132(g)(2)(D); *Northwest Administrators*, 104 F.3d at 258.

---

[4]This recommendation is not contrary to *Int'l Union of Operating Engineers, v. Karr*, 994 F.2d 1426 (9th Cir. 1993).  In *Karr* the Trusts filed two separate lawsuits to recover delinquent contributions, liquidated damages and interest for different periods.  Defendant Karr appeared in those actions.  In the first action, the trial court granted the Trusts' motion to compel an audit, but the Trusts never conducted the audit.  Instead, the parties settled both actions.  Specifically, Karr agreed to pay specified amounts in exchange for the Trusts dismissing the lawsuits.  Neither settlement contained a reservation of right to bring an action for additional payments found owing by any subsequent audit of the relevant periods.

The Trusts later sought an audit, and when Karr refused, the Trusts filed a third action to compel an audit and collect amounts found owing.  In this third action, the Trusts sought to audit a period that included months that had been the subjects of the prior settlements.  The court dismissed the third action as a matter of *res judicata* because the request for an audit was subsumed in the settled first action and should have been brought in the settled second action.  The Court states, "the Trusts could have brought their claim to *compel* an audit and to recover underpaid contributions found by the audit in the same action as their prior claims for delinquent payments." 994 F.2d at 1430 (emphasis in original).

The facts before us are distinguishable from those in *Karr*.  In this case, the Trusts have filed one action seeking a judgment for damages currently known to be owing as well as an audit of the relevant period to more accurately assess the delinquencies.  Defendants have not appeared, and there is no settlement regarding the amounts owed for this period.  The Trusts do not seek to file a new lawsuit.  They ask the court to retain jurisdiction to *amend the judgment* to 'correct' the damages award in this lawsuit following the audit.  It is within the Court's power to retain jurisdiction for the purpose of *amending* the judgment by default once an audit more accurately assesses the damages.

1    Plaintiffs seek reimbursement of attorneys' fees and costs in the amount

2  $5,451.61.  Bevington Decl., at ¶¶5-7.

3

4              **1.      Tasks Performed and Number of Hours Spent on Those Tasks**

5    Plaintiffs seek fees in connection with 17.6 hours expended drafting and filing

6  the complaint, the request for default, and the instant Motion, and for effecting

7  service.  Bevington Decl., at ¶¶6-7 and Ex. D.

8    We have reviewed counsel's billing records and RECOMMEND that the

9  District Court find that the kinds of tasks performed by counsel were reasonably

10  undertaken.  We also RECOMMEND that the District Court find that counsel

11  expended a reasonable number of hours completing those tasks.

12    Accordingly, we RECOMMEND that the District Court grant plaintiffs'

13  request for reimbursement of attorneys' fees in connection with 17.6 hours.

14

15              **2.      Hourly Rates**

16    Plaintiffs seek reimbursement of their attorneys' time at the rate of $225.00 per

17  hour for Anne Bevington and James P. Watson.  Bevington Decl., at ¶6.  Plaintiffs

18  have presented <u>no</u> evidence in this action about <u>counsel's experience and</u>

19  <u>qualifications</u> in order to support the requested billing rate.  Local Rule 54.6(b)(3).

20  However, as stated in our November 15th Order, the court takes judicial notice of the

21  Supplementary Declaration of Bruce K. Leigh in Support of Motion for Default

22  Judgment, filed October 13, 2006, <u>in C06-0328  JSW</u>, setting forth counsel's

23  experience and qualifications.

24    We have sufficient experience with local billing rates in these kinds of cases

25  (as well as many others) to conclude that Ms. Bevington's and Mr. Watson's billing

26  rates are commensurate with the prevailing market rate in the Bay Area for lawyers of

27  their skill and experience doing the kind of work these matters involved.  We,

28  therefore,  RECOMMEND that the District Court approve reimbursement of their

hours at the rate of $225.00 per hour.

### 3.   Costs

Plaintiffs also seek costs in the amount of $1,491.61.  Bevington Decl., at ¶5.

These costs were incurred for postage, filing fees, "in-house" photocopies, process service and messenger fees and internet legal research.  *Id*., at Ex. C.  The items for which reimbursement is sought constitute taxable costs and/or out-of-pocket expenses normally chargeable to the client.  Civil Local Rule 54-3.  *Accord*, *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) (fee award under 42 U.S.C. §1988).  With the exception of one cost item, we find that the amount plaintiffs request for costs is reasonable.

Plaintiffs' "cost transaction list" seems to reflect two charges for messenger/service attempts on May 23, 2006.  Bevington Decl., at Ex. C.  We expressly invited plaintiffs to explain this apparent double charge, but they were unable to do so.  See, Order, filed November 15, 2006; Transcript December 20, 2006, hearing.  Therefore, we RECOMMEND that the District Court deny reimbursement of the second charge for $95.00.

We, therefore, RECOMMEND that the District Court grant plaintiffs' request for costs in the amount $1,396.61.

### 4.   Recommendation re Fees and Costs

We recommended that the District Court reimburse plaintiffs for 17.6 hours expended by counsel.  We also recommended that Ms. Bevington's and Mr. Watson's hours be reimbursed at the rate of $225.00 per hour.  Finally, we recommend that the District Court award costs in the amount $1,396.61.

For the reasons set forth above, if the District Court adopts this Court's recommendation to enter judgment in favor of plaintiffs on their claim for unpaid contributions, we RECOMMEND that the District Court award plaintiffs attorneys' fees and costs in the amount $5,356.61.

//

//

**III.    Conclusion**

We RECOMMEND that the District Judge enter judgment in plaintiffs' favor and against the entity Atoll Topui Island, Inc., and Lopeti Kiteau Topui, individually, in the total amount $43,809.25 for (1) unpaid contributions, liquidated damages, and interest through October 25, 2006, relating to contributions due for work performed during the periods March 2003 through November 2004 and January 2004 through June 2004, (2) liquidated damages and interest for contributions that were delinquent but were paid before May 5, 2006, as well as (3) attorneys' fees and costs reasonably incurred in this action.  We further RECOMMEND that the District Court permit plaintiffs to move the Court to amend the judgment to reflect additional interest on the unpaid contributions accrued from October 26, 2006, through the date of the judgment.

We RECOMMEND that the District Court also enter an order compelling defendants Atoll Topui Island, Inc., and Lopeti K. Topui to submit to an audit for the period July 1, 2004 through the present, that the Court order defendants to provide relevant records requested by the auditor, and that the District Court enter an amended judgment for additional amounts found owing following an audit procedure in which defendants received notice of the auditor's findings and an opportunity to respond.

**The Court ORDERS plaintiffs to serve a copy of this Report and Recommendation on defendants immediately.**

IT IS SO REPORTED AND RECOMMENDED.

Dated: December 20, 2006

/s/  Wayne D. Brazil
WAYNE D. BRAZIL
United States Magistrate Judge

Copies to:
Plaintiffs with direction to serve defendants,
SBA,  wdb, stats